# ASPHALT & GRANITOID CONSTRUCTION COMPANY, v. HAUESSLER, Appellant.

### Division One, February 22, 1907.

1. **CITY CHARTER: Conflicting Ordinance.** The charter of the city of St. Louis is the fundamental law of the city, and all ordinances in conflict therewith or violative thereof are null and void.

2. ————: ————: **General and Special: Width of Sidewalks: Tax Bills: Void.** The city charter provided that "no special or general ordinance which is in conflict or inconsistent with the general ordinances of prior date shall be valid or effectual unless such prior ordinance or the conflicting parts thereof are repealed by express terms." The general ordinance prescribed that "all streets of fifty and under sixty feet in width shall have sidewalks ten feet wide." Wyoming street was sixty feet wide except between Pennsylvania and Nebraska avenues, where it was fifty feet wide, and the special ordinance, passed at a time the prior general ordinance was in existence, said "the width of the roadway on the part of Wyoming street between Nebraska and Pennsylvania avenues is hereby established at 36 feet, the center line of the roadway to be 30 feet south of the north line of Wyoming street as now opened," and did not expressly repeal the general ordinance. *Held*, that the special ordinance required eighteen feet south of the center line of the street between these two avenues to be roadway, and allowed only two feet for a sidewalk there, and was therefore void, and the tax bills issued in payment of said two-foot sidewalk against the abutting property were also void. Distinguishing State ex rel. v. Schweickardt, 109 Mo. 496, and Ruschenberg v. Railroad, 161 Mo. 70.

3. ————: **Benefit Assessments: Theory.** It should be constantly borne in mind, in construing the statutes authorizing benefit assessments, that the taxing power rests upon the theory of benefits and the principles of equality, and cannot be sustained on any other theory.

4. ————: ————: **Upon Entire Depth of Property.** The city charter provided that "whenever the estimated special taxes to be assessed against any property shall, in the aggregate, amount to more than 25 per cent of the assessed value of said property, calculating a depth to such property of 150 feet, then the assembly shall provide out of the general revenue fund for the

payment of the amount in excess of the said 25 per cent." *Held*, that where the abutting property had a depth of over 600 feet, and extended from street to street, the whole depth could not be assessed with the tax-bill, but only 150 feet thereof. To make the tax bill a lien against the entire property would not be an assessment according to benefits, but for the remote portions thereof might amount to a practical confiscation.

5. ———: ———: **Notice: Benefit or Damage.** The property-owner in this case notified the contractor in advance that the ordinance under which the work was to be done was in violation of the city charter, and that he objected to the improvement being made, and would not pay for it if made. Besides, it is very questionable whether the sidewalk two feet wide was not a damage, rather than a benefit, to his property.

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED.

*H. A. & H. H. Hauessler* for appellant; *Charles S. Reber* of counsel.

(1) An ordinance in conflict with a general ordinance of prior date, the conflicting parts whereof are not in express terms repealed, is in conflict with section 28 of article 3 of the city charter, and void. The improvement ordinance involved in this case is such an ordinance. It is therefore void and the majority opinion of the Court of Appeals so holding is clearly right. St. Louis v. Sanguinet, 49 Mo. 581. (2) And that decision so holding is not in conflict with the decisions of this court in the cases of State ex rel. v. Schweickardt, 109 Mo. 496, and Ruschenberg v. Railroad, 161 Mo. 70. (2) The improvement ordinance authorizes an improvement to be made on the street improved, in front of defendant's property, as though said street was sixty feet wide, whereas its actual width at said point is only fifty feet. It is therefore in conflict with section 15 of article 6 of the city charter, and void. Poupenny

v. Dannan, 6 Mo. App. 573. (3) The tax bill sued on is assessed against defendant's entire property to its full depth, 611 feet. It thereby violates section 18 of article 6 of the charter and for that reason, if for none other, is absolutely void. Wolfort v. St. Louis, 115 Mo. 139.

*Geo. W. Lubke* for respondent.

(1) Appellant's second point is based on a provision to section 15 of article 6 of the St. Louis charter of 1876 (R. S. 1899, vol. 2, p. 2511), which reads, "that no improvement or repairs shall be ordered upon any future street, alley or highway which shall not have been opened, dedicated or established according to the provisions of this charter and law." Although the evidence showed that this Wyoming street had been established long before the adoption of this charter provision, appellant asks the court to strike the word "future" from the charter so that he may thereby avoid the payment of his share of the improvement of this street. But the rule governing the courts in construing enactments of this character will not permit this. Like the word "hereafter" this word "future" must be construed to mean the time after the charter took effect; and it must also be taken in its plain or ordinary and usual sense. R. S. 1899, secs. 4155, 4160, p. 996. By limiting this provision to future streets, alleys and highways the charter-framers designed to make uniform the laying out and improvement of streets in the new additions to the city. This purpose must also be taken into consideration in determining the meaning of the provision. Pembroke v. Huston, 180 Mo. 636; Ross v. Railroad, 111 Mo. 26; Spitler v. Young, 63 Mo. 44. (2) Because Wyoming street when first established in 1839 was given a width of forty feet which was changed to fifty in 1855 by the addition of ten feet on the north side of it, appellant insists that the city

had no right thereafter to deal with and improve it otherwise than as a fifty-foot street, although his neighbors to the right and left of him on the south side had made it a sixty-foot street by dedicating ten feet of their ground for it. The street had a length of about one and one-half miles and the property fronting it was laid out into lots and built up except the block owned by appellant. He used his for agricultural purposes as one piece fronting Wyoming street 270 feet, declined to make dedication of any part of it and wanted condemnation proceedings taken for his ten feet. This was the situation when on March 24, 1899, the ordinance was approved, by the fourth section of which the roadway of this street was established the width of thirty-six feet, the center of this roadway to be thirty feet south of the north line of the street ''as now opened.'' This ordinance also provided for the improvement of this roadway with Telford pavement a distance of five blocks, the letting of a contract for this work and the issuance of special taxbills for the cost against the adjoining property in accordance with the charter. Under the ordinance respondent became the contractor, did the work and received the taxbills, including the one against appellant's property. The amount of this bill was less than twenty-five per cent of the assessed value of appellant's property calculated to a depth of one hundred and fifty feet. When this ordinance was passed there was in force a general ordinance of the city which provided that all streets of the width of fifty feet and under sixty feet should have sidewalks ten feet wide and those of sixty feet and under seventy-five feet sidewalks twelve feet wide. And a part of section 28 of article 3 of the city charter provided that ''no special or general ordinance which is in conflict or inconsistent with general ordinances of prior date, shall be valid or effectual until such prior ordinance, or the conflicting part thereof, are repealed

by express terms'' (R. S. 1899, vol. 2, p. 2488). The circuit court by instruction V, given for plaintiff, declared that this direction of the general ordinance of the city as to the width of sidewalks ''did not invalidate the action of the Board of Public Improvements and Municipal Assembly of the city in recommending and adopting the ordinance, No. 19753, establishing the width or extent of the roadway of Wyoming street adjoining the property of the defendant, and providing for the improvement of said roadway; and that it was not essential to the validity of said proceedings of the Board of Public Improvements and Municipal Assembly of the city that said city first take steps to acquire the additional ten feet of the defendant's property so as to provide for a sidewalk twelve feet wide in front of his premises.'' Respondent insists that this instruction was correct, and that the holding to the contrary by a majority of the judges of the Court of Appeals conflicted with the previous decisions of the Supreme Court cited by Judge REYBURN in his dissenting opinion. St. Louis v. Sanguinette, 49 Mo. 581; State ex rel. v. Schweickardt, 109 Mo. 496; Ruschenberg v. Railroad, 161 Mo. 82; Campbell v. Railroad, 175 Mo. 177.

WOODSON, J.—This is a suit on a special tax-bill, for the improvement of a street in the city of St. Louis, and was instituted in the circuit court of that city, where a judgment was rendered sustaining the validity of the bill, and adjudged a foreclosure of the lien against appellant's property. He appealed to the St. Louis Court of Appeals, where the judgment of the circuit court was reversed, by a divided court, and the dissenting judge has certified the cause to this court, because, in his opinion, the opinion of the court is in conflict with the decisions of this court.

There seems to be no dispute regarding the facts in the case, and as they appear to be fully and fairly

stated in the opinion of the Court of Appeals, we will adopt its statement, with a few slight additions, and it is as follows:

"Wyoming street in the city of St. Louis extends east and west from east of Oregon avenue to Gravois avenue and beyond, and is open for the uniform width of sixty feet except in the block between Nebraska and Pennsylvania avenues, where it is only fifty feet wide. On the south side of the street appellant Hauessler owns the entire block of ground between those avenues, which has a frontage of 270 feet by 611.58 feet deep, and the narrowness of the street in that block in comparison with its breadth elsewhere, is caused by the projection of his land ten feet beyond the street's south line as it extends east and west of the block and beyond Nebraska and Pennsylvania avenues.

"In March, 1889, the Municipal Assembly of the city of St. Louis passed an ordinance entitled, 'An ordinance to improve Wyoming street between Oregon and Gravois avenues and to establish the width of the roadway of the part thereof between Nebraska and Pennsylvania avenues.' Said ordinance directed that Wyoming street between Oregon and Gravois avenues be improved by grading, curbing, guttering and paving the roadway with Telford pavement, and prescribed various specifications as to the details of the work, the cost of which it enacted should be charged as a lien on the adjoining property, except as to contemplated surplus over and above twenty-five per cent of the assessed value of the adjacent lots, which excess the city was to bear, and an appropriation to pay it was made.

"The width of the roadway in front of the block of ground on the south side, owned by appellant, was fixed by section 4 of said ordinance as follows: 'The width of the roadway on the part of Wyoming street between Nebraska and Pennsylvania avenues is hereby established at thirty-six feet, the center line of the road-

way to be thirty feet south of the north line of Wyoming street as now opened.'

"Pursuant to this ordinance said street was curbed, guttered and paved between Oregon and Gravois avenues as provided, the curbing on the north side being set at the uniform distance of twelve feet from the north line of the street, and on the south side the same distance from the south line of the street except in front of appellant's block between Nebraska and Pennsylvania avenues, where the curb was set only two feet from the south line of the street and the roadway was graded up to the curb pursuant to said section 4, which fixed the center of the roadway thirty feet south of the north line of the street and, of course, left only twenty feet from the center of the roadway to the south line of the street, of which eighteen feet were taken up by the roadway, thus leaving two feet between the curb and the north line of the appellant's ground, or the south line of the street.

"Both before the work was begun and during its progress Hauessler notified the Asphalt & Granitoid Construction Company, which had the contract for the improvement, that he objected to the improvement being made, and would not pay for it. Taxbills were afterwards issued against the abutting property; one for $696.48 against the appellant's block, which is the subject-matter of this action.

"Osterhaus, the city official who calculated the assessments for the work and made out the taxbills; testified: 'Under the ordinance the street was to be improved between these two streets thirty-six feet wide commencing at the north line of Wyoming street at the building line. That gave sidewalk of twelve feet on the north side. Then the other was for thirty-six feet of roadway and two feet of sidewalk in front of defendant's property—fifty feet in all."

"At the time the work was ordered the following

general ordinance in regard to the construction of sidewalks along streets in the city of St. Louis was in force:

" 'In all streets of thirty and under thirty-eight and one-half feet in width the sidewalks shall be five and one-half feet wide; those of thirty-eight and one-half feet wide and under forty feet in width shall have sidewalks six and one-half feet wide; those of forty and under fifty feet in width shall have sidewalks eight feet wide: those of fifty and under sixty feet in width shall have sidewalks ten feet wide; those of sixty and under seventy-five feet in width shall have sidewalks twelve feet wide; those of seventy-five feet and under eighty feet in width shall have sidewalks fourteen feet wide; those of eighty and under one hundred feet in width shall have sidewalks fifteen feet wide.' [R. O. 1892, sec. 599; St. Louis Municipal Code, sec. 897.]

"The charter of the city of St. Louis provides that: 'No special or general ordinance which is in conflict or inconsistent with the general ordinances of prior date shall be valid or effectual unless such prior ordinance or the conflicting parts thereof are repealed by express terms.' "

I. The charter of the city of St. Louis is the fundamental law thereof, and all ordinances of the city which are in conflict therewith, or violative of its mandates, are null and void, upon the same principle that a statute which contravenes the Constitution must fall. That being true, it becomes necessary for us to examine the provisions of the general ordinance, above quoted, and those of the special ordinance ordering the improvements to be made in Wyoming street, and to determine whether or not these are in conflict with each other; and, if so, which one must stand and which must fall.

The material portion of the general ordinance, which was in force at the time of the enactment of the special, is as follows:

"In all streets of thirty and under thirty-eight and one-half feet in width, the said walks shall be five and one-half feet wide; . . . those of fifty and under sixty feet in width shall have sidewalks ten feet wide. those of sixty and under seventy-five feet in width shall have sidewalks twelve feet wide."

At the time of the passage of the special ordinance, the general ordinance, just quoted, was in full force and effect.

Section four of the special ordinance, ordering the street improved, is in the following words:

"The width of the roadway on the part of Wyoming street between Nebraska and Pennsylvania avenues is hereby established at thirty-six feet, the center line of the roadway to be thirty feet south of the north line of Wyoming street as now opened."

Wyoming street was opened for the uniform width of sixty feet, excepting in front of appellant's property, where it was only fifty feet wide.

Under this state of facts, the question presented is, is the special ordinance in conflict with the general and, therefore, void on that account? The general ordinance fixed the width of the sidewalks on streets of fifty feet in width at ten feet; and, as Wyoming street in front of appellant's property was only fifty feet in width, the sidewalk at that point was by that ordinance required to be ten feet wide. Section four of the special ordinance, by establishing the width of the roadway in front of his property at thirty-six feet in width, with the center line thereof thirty feet south of the north line of Wyoming street, as then located, by necessary implication established the width of the sidewalk in front of his property at two feet. The correctness of that statement is susceptible of mathematical demonstration. The improvement in front of his property was to be thirty-six feet in width; commencing thirty feet south of the north line of Wyoming

street would leave a space of twelve feet for a sidewalk between the north line of the improvement and the north line of that street, and to that twelve feet add the thirty-six feet, the width of the roadway, and the sum is forty-eight feet, and deduct that sum from the width of the street in front of appellant's property, which was fifty feet, and the remainder is two feet, the width of the sidewalk at that point.

There is no pretense that the prior conflicting parts of the general ordinance had been, in express terms, repealed, as provided for by the section of the charter heretofore mentioned. At that point the roadway, under the general ordinance, should have been thirty feet wide, and the sidewalk should have been ten. It must, therefore, follow, that the special ordinance establishing the width of the roadway at thirty-six feet, and that of the sidewalk at two feet, in front of appellant's property, is null and void. By so holding we simply give full force and effect to the charter provision, which declares that an ordinance in conflict with a general ordinance of prior date, whose conflicting parts are not expressly repealed, shall be null and void.

II. It is stated in the dissenting opinion of the Court of Appeals, and urged upon us by counsel for respondent, that the majority opinion of that court, which is substantially the same as the conclusions reached here, is in conflict with the cases of State ex rel. v. Schweickardt, 109 Mo. 496, and Ruschenberg v. Railroad, 161 Mo. 70.

We do not concur in that view of either of those cases. Upon a close examination of those cases it will be seen that in the Schweickardt case, at page 504, it is expressly stated that both ordinances were upheld on the ground that the conflicting parts of the prior ordinances had been repealed in express terms, as prescribed by the charter. And in the Ruschenberg case both ordinances were sustained because the court held

there was no conflict between the two, and therefore there was no violation of the city charter. [See pages 84 and 85 of that case.]

III. It appears from the record in this case that appellant's property is 611.58 feet deep, extending back to the next parallel street, and that this entire property, to its whole depth, was assessed for the payment of these improvements.

In the construction of statutes prescribing the mode of taxation, it should be constantly borne in mind that the taxing power rests upon the theory of benefits and the principles of equality. It cannot be sustained upon any other theory. The framers of the charter, when they drew the section regarding the taxing power of the city for street improvements, must have had that idea in mind, and drew it accordingly. And in construing that section, which is section 18 of article 6 of the charter, we also should not lose sight of those rules. The portion of that section which is material for, its proper construction is as follows:

"Whenever the estimated special taxes to be assessed against any property shall, in the aggregate, amount to more than twenty-five per cent of the assessed value of said property, calculating a depth to such property of one hundred and fifty feet, then the assembly shall provide out of the general revenue fund for the payment of the amount in excess of the said twenty-five per cent."

Respondent contends that the one hundred and fifty feet limit, above stated, does not say or mean that the adjoining property can only be assessed to a depth of one hundred and fifty feet, but that this one hundred and fifty feet shall be taken simply as a limit of the area of ground to be assessed, for the purpose of limiting the amount to be paid by the property-owner, and thereby establishing the basis from which to calculate the amount to be paid by the city; and that

where the improvement is made, the whole of the adjoining property, whether it is a hundred and fifty feet in depth, or any other distance, however great, for that matter, is properly assessable for the payment of its portion of the cost.

We do not believe such a construction is the correct meaning of the charter provision, because, as in this case, where the property extends from street to street, a distance of more than six hundred feet, or in cases where the depth might be much greater, the benefits to be derived by the remote portion of the property might be so small as to amount to a practical confiscation of that part.

We believe it was the intention to not only limit the amount of the assessment to twenty-five per cent of the assessed value of the property, but also to prescribe the bounds of the property beyond which the assessment should not extend. If it was not for the double limitation, property, however remote from the benefited district, might be taxed therefor, if the front thereof only adjoined the improved street.

This court in construing this same section of the charter in a previous case used the following language:

"By the limitation of the taxing power above expressed, the right to charge the 'adjoining property' for improvements, such as are here in view, is qualified by the phrase 'calculating a depth to such property of one hundred and fifty feet,' *as well as in respect of the amount of the special tax.*" [Wolfort v. St. Louis, 115 Mo. l. c. 143.]

IV. The appellant in this case does not occupy the position which most property-owners do in this class of cases. Generally they stand idly by and see their property improved at the expense of the contractor, and, when called upon to pay the cost, refuse to do so because of some technicality which has no bearing whatever upon the merits of the case. Here the property-

owner notified the contractor in advance that the ordinance under which the work was to be done was in violation of the city charter, and would result in injury to his property rights. Under the facts of this case it may be seriously doubted whether his property was benefited or damaged by this improvement. Before he or anyone else would be likely to improve that property he, or they, would have to dedicate ten feet off of the front of the property to the city in order to make the sidewalk in front thereof to conform to the sidewalk on either side of him. Unquestionably he is damaged at least to the extent of the value of that ten feet of ground, and whether the benefits to be derived from the improvements exceed that sum or not may be very questionable.

For the reasons above stated, the judgment of the St. Louis Court of Appeals, reversing the judgment of the circuit court, is affirmed.

All concur.